IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 29, 2023 Session

## ALOHA POOLS & SPAS OF JACKSON, LLC v. KHALED ELEIWA a/k/a KEVIN ELEIWA

**Appeal from the Circuit Court for Madison County**
**No. C-20-6    Joseph T. Howell, Judge**

_____

### No. W2023-00941-COA-R3-CV

_____

This appeal arises from a dispute over the construction of a swimming pool.  The defendant entered into a written contract with the plaintiff for the construction of a pool at the defendant's home.  The plaintiff later filed a complaint alleging that the defendant failed to pay the amount due under the contract.  The defendant filed a counter-complaint and alleged breach of contract, fraud and/or misrepresentation, and violations of the Tennessee Consumer Protection Act.  After a bench trial, the trial court found in favor of the plaintiff. The defendant subsequently filed a motion for relief from the judgment, which the trial court denied.  The defendant appeals.  We affirm the trial court's decision and remand for determination of appellate attorney's fees.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Kevin A. Snider and William R. Faulk, Germantown, Tennessee, for the appellant, Khaled Eleiwa a/k/a Kevin Eleiwa.

Adam C. Crider, Craig P. Sanders, and Christina D. McConnell, Jackson, Tennessee, for the appellee, Aloha Pools & Spas of Jackson, LLC.

**OPINION**

### I.    FACTS & PROCEDURAL HISTORY

In December 2018, Khaled Eleiwa a/k/a Kevin Eleiwa entered into a written contract with Aloha Pools and Spas of Jackson, LLC ("Aloha") to construct a swimming

pool and install related accessories at his home. The written contract provided that Mr. Eleiwa would pay Aloha "the total sum of $67,730.00" in four installments of $16,932.50. In January 2020, Aloha filed a complaint on a sworn account in the circuit court, alleging that Mr. Eleiwa failed to pay $32,703.00 of the contracted price and, pursuant to the contract, finance charges of 1.5% per month and attorney's fees. Mr. Eleiwa subsequently filed a motion to dismiss, arguing that the trial court should dismiss the case for lack of subject matter jurisdiction due to an arbitration clause in the contract. Additionally, Mr. Eleiwa argued that venue in Madison County was improper because the pool was constructed in Shelby County. The trial court denied this motion, finding that the contract did not require arbitration. The court further found that the contract allowed for the matter to be heard in the courts in Madison County.

Aloha subsequently amended the complaint to additionally seek "a judgment for possession for all pool components and accessories[.]" Thereafter, Mr. Eleiwa filed an answer and a counter-complaint. In his counter-complaint, Mr. Eleiwa alleged breach of contract, fraud and/or misrepresentation, and violations of the Tennessee Consumer Protection Act. *See* Tenn. Code Ann. § 47-18-101 *et seq.* Mr. Eleiwa further alleged that Aloha failed to complete construction of the pool and related accessories in a workmanlike manner. The counter-complaint stated that Aloha "engaged in fraud and/or misrepresentation" by falsely representing that it was properly licensed and would obtain the necessary permits to complete the type of work; that it would comply with applicable statutes, regulations, and workmanlike standards; and that it would correct any issues and honor the warranty. Additionally, Mr. Eleiwa alleged that Aloha unilaterally added additional concrete decking around the pool and forged his name on a change order to justify additional charges of $12,973.00. In the counter-complaint, Mr. Eleiwa requested, among other things, a jury trial, a judgment against Aloha "in an amount of not less than $50,000, or an amount to be more specifically proven either before or at trial," and punitive damages.

In June 2021, Aloha moved to strike Mr. Eleiwa's jury demand, arguing that by the terms of the contract, the parties waived their right to trial by jury. The trial court granted this motion, finding that the parties had voluntarily entered into the contract and that, pursuant to the contract, the parties voluntarily waived their right to trial by jury. The court further stated that "[b]ecause the parties do not dispute the validity of the contract, the terms set forth in the contract are binding on them."

In August 2022, after a bench trial, the trial court entered a judgment in favor of Aloha, finding that Aloha established the essential elements of its breach of contract claim and that Mr. Eleiwa failed to prove his counterclaims or establish a violation of the Tennessee Consumer Protection Act. The trial court awarded Aloha $32,703.00, court costs, and post-judgment interest at the statutory rate. The court further awarded Aloha reasonable attorney's fees, but the court did not set the amount of attorney's fees. Instead,

the court's order stated that the amount of attorney's fees would be later incorporated into a final order.

In January 2023, Mr. Eleiwa filed a motion for relief from the August 2022 judgment and alleged that new evidence surfaced that Aloha failed to obtain a final permit for the construction and that the pool failed inspection. He further argued that this new evidence was "directly contrary to the testimony of Plaintiff and its representatives at trial." In May 2023, after a hearing, the trial court entered an order denying Mr. Eleiwa's motion, finding that the alleged new evidence did not "qualify as new evidence" because information on the permits was requested and provided in discovery and because the information was a matter of public record available to both parties. In this order, the trial court also found that Aloha was entitled to an award of attorney's fees in the amount of $36,771.00. Mr. Eleiwa subsequently filed a notice of appeal to this Court.

## II.    ISSUES PRESENTED

Mr. Eleiwa presents the following issues for review on appeal, which we have slightly restated:

1. Whether the trial court erred by selectively and/or inconsistently enforcing the terms of the contract;
2. Whether the trial court erred in denying Mr. Eleiwa's motion for relief from the trial court's August 2022 judgment.

In its posture as appellee, Aloha presents the following issues for review on appeal, which we have slightly restated:

1. Whether Mr. Eleiwa timely and properly appealed any ruling besides the denial of his motion for relief from judgment;
2. Whether the trial court acted within its broad discretion in denying Mr. Eleiwa's motion for relief from judgment;
3. Whether the trial court correctly applied the terms of the written contract;
4. Whether this Court should award appellate attorney's fees to Aloha and remand the case so that the trial court can determine the amount of such fees.

For the following reasons, we affirm the decision of the trial court and remand for determination of appellate attorney's fees.

## III.    STANDARD OF REVIEW

This is an appeal of a trial court's decision made after a bench trial. We review factual findings de novo with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Spearman v. Shelby Cnty. Bd. of Educ.*,

637 S.W.3d 719, 731 (Tenn. Ct. App. 2021). "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *In re Est. of Ladd*, 247 S.W.3d 628, 637 (Tenn. Ct. App. 2007) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000)). Questions of law are reviewed de novo with no presumption of correctness. *In re Sidney J.*, 313 S.W.3d 772, 774 (Tenn. 2010).

## IV.    DISCUSSION
### A. Notice of Appeal

We first address Aloha's issue regarding the content and timing of Mr. Eleiwa's notice of appeal. Aloha argues that because the notice of appeal only specifies that he is appealing the order the trial court entered in May 2023, the only issue properly before this Court is whether the trial court erred in denying his motion for relief from judgment.

Rule 3(f) of the Tennessee Rules of Appellate Procedure requires that a notice of appeal "designate the judgment from which relief is sought[.]" At times, this Court has "strictly applied Rule 3 and refused to consider on appeal issues resolved in orders other than the one specified in the notice of appeal." *State v. Delinq. Taxpayers of Benton Cnty. Tenn.*, No. W2021-01050-COA-R3-CV, 2022 WL 17491300, at *4 (Tenn. Ct. App. Dec. 7, 2022); *see, e.g.*, *Cox v. Shell Oil Co.*, 196 S.W.3d 747, 760 (Tenn. Ct. App. 2005) (limiting appellate review to order designated in notice of appeal); *Howse v. Campbell*, No. M1999-01580-COA-R3-CV, 2001 WL 459106, at *3 (Tenn. Ct. App. May 2, 2001) (finding that appellant's failure to file a second notice of appeal designating an order dismissing his claims against four defendants "undermined the notice function that notices of appeal are intended to serve" and thus did not perfect an appeal of that order); *Goad v. Pasipanodya*, No. 01A01-9509-CV-00426, 1997 WL 749462, at *2 (Tenn. Ct. App. Dec. 5, 1997) ("[Appellant's] notice of appeal identifies only the trial court's June 19, 1995 order and does not mention the March 17, 1995 order. Thus, Tenn. R.App. P. 3(f) limits his appeal to the June 19, 1995 order."); *Hall v. Hall*, 772 S.W.2d 432, 436 (Tenn. Ct. App. 1989) ("[T]he clear and specific wording of the notices of appeal limits the issues on this appeal to the judgment designated in the notices.").

In a more recent line of cases, however, we have emphasized the notice function of Rule 3 and held that our scope of review was not limited to orders designated in the notice of appeal. *See, e.g.*, *Delinq. Taxpayers of Benton Cnty.*, 2022 WL 17491300, at *5 ("[A]lthough the amended notice of appeal only references the November 18 final order, we cannot conclude that Purchaser was not sufficiently notified of Appellant's intent to seek further review of the trial court's judgment."); *Frogge v. Joseph*, No. M2020-01422-COA-R3-CV, 2022 WL 2197509, at *19 (Tenn. Ct. App. June 20, 2022) (holding that a notice of appeal filed by the appellants before a final order "served their purpose of sufficiently informing" the appellees of an intent to appeal the final judgment); *In re Caleb F.*, No. M2016-01584-COA-R3-JV, 2017 WL 5712992, at *4 (Tenn. Ct. App. Nov. 28,

- 4 -

2017) ("The notice of appeal is not a review-limiting device.") (quotation omitted); *Ray v. Ray*, No. M2013-01828-COA-R3-CV, 2014 WL 5481122, at \*10 n.9 (Tenn. Ct. App. Oct. 28, 2014) (explaining that the notice of appeal "plays no part in defining the scope of appellate review" and "is not a review-limiting device" so when "any party files a notice of appeal the appellate court may consider the case as a whole") (quotations omitted); *McKissack ex rel. McKissack v. Davidson Transit Org.*, No. M2013-01224-COA-R3-CV, 2014 WL 575912, at \*2 n.3 (Tenn. Ct. App. Feb. 11, 2014) ("While we are aware of the various cases interpreting Tenn. R. App. P. 3(f), we decline to put narrow limits on the scope of appeal in this case."); *Cox v. Tenn. Farmers Mut. Ins. Co.*, 297 S.W.3d 237, 243 (Tenn. Ct. App. 2009) (rejecting the argument that Rule 3(f) should be narrowly construed); *Elliot v. Life of the S. Ins. Co.*, 296 S.W.3d 64, 68 (Tenn. Ct. App. 2008) ("Although Ms. Elliot appealed the order denying her motion to alter or vacate the orders for summary judgment, our review is not limited to only that order as it is well settled that the notice of appeal is not a review limiting device, and we may consider any question presented[.]"); *In re NHC-Nashville Fire Litig.*, 293 S.W.3d 547, 560 (Tenn. Ct. App. 2008) ("We accord great deference to the advisory commission comments to the effect that Rule 3(f) is not intended to limit the scope of review so long as the notice of appeal informs the appellee that the appellant intends to seek further review of the trial court's judgment."); *Consol. Waste Sys., LLC v. Metro. Gov't of Nashville & Davidson Cnty.,* No. M2002-02582-COA-R3-CV, 2005 WL 1541860, at \*45 (Tenn. Ct. App. June 30, 2005) ("[T]he clear preference is for liberality in interpreting a notice of appeal and the scope of appeal."). The reasoning in this line of cases finds support in the Advisory Committee Comments for the Tennessee Rules of Appellate Procedure. *Delinq. Taxpayers of Benton Cnty.*, 2022 WL 17491300, at \*4. The Advisory Commission Comment for Rule 3(f) states, in relevant part:

> This subdivision specifies the content of the notice of appeal. The purpose of the notice of appeal is simply to declare in a formal way an intention to appeal. As long as this purpose is met, it is irrelevant that the paper filed is deficient in some other respect. Similarly, the notice of appeal plays no part in defining the scope of appellate review. Scope of review is treated in Rule 13. This subdivision read in conjunction with Rule 13(a) permits any question of law to be brought up for review [except as otherwise provided in Rule 3(e)] as long as any party formally declares an intention to appeal in a timely fashion.

*Frogge*, 2022 WL 2197509, at \*18 (quoting *Consol. Waste Sys.*, 2005 WL 1541860, at \*43). Likewise, Rule 13(a) provides that "any question of law may be brought up for review and relief by any party," and its Advisory Commission Comment states that the rule "rejects use of the notice of appeal as a review-limiting device." *Id.*

Here, Aloha relies on the *Howse-Goad-Hall* line of cases. We instead apply the approach taken in *Consolidated Waste* and its progeny. Although Mr. Eleiwa's notice of

- 5 -

appeal only designates the order "filed on May 30, 2023" as the order being appealed, his notice of appeal serves "as notice of [his] broader intent to 'seek further review of the trial court's judgment.'" *Delinq. Taxpayers of Benton Cnty.*, 2022 WL 17491300, at \*4 (quoting *Frogge*, 2022 WL 2197509, at \*19). Thus, we reject Aloha's argument that the scope of our review is limited to the order designated in Mr. Eleiwa's notice of appeal.

Aloha further argues that Mr. Eleiwa failed to timely appeal the August 2022 order. *See* Tenn. R. App. P. 4(a) ("[T]he notice of appeal . . . shall be filed with the clerk of the appellate court within 30 days after the date of entry of the judgment appealed from[.]"). However, the trial court's August 2022 judgment was not a *final* judgment because it expressly reserved setting the amount of attorney's fees to a later date. *See In re Est. of Atkins*, No. E2018-02018-COA-R3-CV, 2020 WL 1320717, at \*8 (Tenn. Ct. App. Mar. 19, 2020) ("Generally, an order that does not adjudicate all of the claims between all of the parties . . . is not appealable as of right."); *Scott v. Noland Co.*, No. 03A01-9407-CV-00248, 1995 WL 11177, at \*1 (Tenn. Ct. App. Jan. 12, 1995) (concluding that there was no final judgment because the trial court did not award a specific amount of attorney's fees). Instead, the court's May 2023 order denying Mr. Eleiwa's motion for relief from judgment was a final judgment because it set the amount of attorney's fees awarded to Aloha, "leav[ing] nothing else for the trial court to resolve." *Shofner v. Shofner*, 181 S.W.3d 703, 712 (Tenn. Ct. App. 2004); *see also Utopia Place, LLC v. E. Properties, Inc.-Bellevue*, No. M2014-02196-COA-R3-CV, 2016 WL 4005927, at \*4 (Tenn. Ct. App. July 20, 2016) (quoting *Edwards v. Banco Lumber Co., Inc.*, 101 S.W.3d 69, 75 (Tenn. Ct. App. 2002)) ("Finality may be achieved through a series of orders. . . . [A]n order or judgment is final when it disposes 'of all *pending* claims.'"). Because the trial court entered its final judgment in May 2023, the thirty-day period for filing a notice of appeal commenced in May 2023. *See Ball v. McDowell*, 288 S.W.3d 833, 836 (Tenn. 2009) ("The date of entry of a final judgment in a civil case triggers the commencement of the thirty-day period in which a party aggrieved by the final judgment must file . . . a notice of an appeal."). Furthermore, in appealing from the May 2023 order, Mr. Eleiwa "br[ought] up [on appeal] all pre-judgment orders or decisions," including the August 2022 judgment. *Thompson v. Logan*, No. M2005-02379-COA-R3-CV, 2007 WL 2405130, at \*16 (Tenn. Ct. App. Aug. 23, 2007) ("[A]n appeal from a final judgment brings up all pre-judgment orders or decisions, and any question of law or fact may be considered."). Therefore, we cannot agree with Aloha's argument that Mr. Eleiwa failed to timely appeal the August 2022 order.

### B. Enforcement of the Terms of the Contract

We next address whether the trial court erred by "selectively" or "inconsistently" enforcing the terms of the contract. The argument section of Mr. Eleiwa's appellate brief directs this issue toward whether the contract was an adhesion contract and whether the trial court erred in its enforcement of the jury-waiver, arbitration, and venue clauses of the contract. We address each of these arguments in turn.

- 6 -

### 1. Adhesion Contract

Mr. Eleiwa first argues that the contract is an adhesion contract. However, his precise argument with respect to this issue is unclear from his brief. An adhesion contract is "a standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract." *Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996) (quoting *Black's Law Dictionary* 40 (6th ed. 1990)); *Broemmer v. Abortion Services of Phoenix Ltd.*, 173 Ariz. 148, 840 P.2d 1015 (1992). However, contracts which are characterized as adhesion contracts may still be enforceable. *Id.* If a contract is found to be one of adhesion, enforceability "generally depends upon whether the terms of the contract are beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable." *Id.* "Courts will not enforce adhesion contracts which are oppressive to the weaker party or which serve to limit the obligations and liability of the stronger party." *Id.* It appears that Mr. Eleiwa is attempting to argue that the terms of the contract are unenforceable because the contract at issue was an adhesion contract. Essentially, Mr. Eleiwa can only prevail on this argument if this Court determines that the contract is one of adhesion which cannot be enforced.

We emphasize that Mr. Eleiwa's first issue is narrowly confined to whether the trial court *selectively or inconsistently* enforced the terms of the contract. To argue that the contract is unenforceable because it is one of adhesion is inconsistent with the issues he has set forth. By the terms of the issues, of which he is the author, Mr. Eleiwa challenges only the manner in which the court enforced the contract's terms.[1] He does not argue that the trial court should have entirely refused to enforce the contract. Therefore, the issues he presented on appeal do not encompass whether the contract was an adhesion contract or whether the contract was unenforceable. As such, he has waived this argument. *See Brunetz v. Brunetz*, 573 S.W.3d 173, 186 (Tenn. Ct. App. 2018) (stating that issues that are not raised in a party's statement of issues "are deemed waived" and are not reviewed on appeal). Therefore, we decline to address whether the agreement at issue was an adhesion contract.

### 2. Waiver of Jury Trial

---

[1] As we have previously cautioned, appellants should endeavor to frame each issue "as specifically as the nature of the error will permit." *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. Ct. App. 2012) (citing *Fahey v. Eldridge*, 46 S.W.3d 138, 143-44 (Tenn. 2001); *State v. Williams*, 914 S.W.2d 940, 948 (Tenn. Crim. App. 1995)). This Court is not required to "search[ ] for hidden questions" in appellants' briefs. *Id.* at 334 (citing Bryan A. Garner, *Garner on Language and Writing* 115 (2009); Robert L. Stern, *Appellate Practice in the United States* § 10.9, at 263 (2d ed.1989)); *see also Garrett v. Hidden Valley Homes, LLC*, No. M2022-01531-COA-R3-CV, 2023 WL 6799153, at *3 (Tenn. Ct. App. Oct. 16, 2023).

Mr. Eleiwa further argues that the trial court erred in enforcing the jury-waiver provision of the contract with respect to his counter-complaint. Under Tennessee law, a "pre-dispute contractual jury waiver can be enforced upon motion at any time up to the eve of trial[.]" *Poole v. Union Planters Bank, N.A.*, 337 S.W.3d 771, 778 (Tenn. Ct. App. 2010). Moreover, "the decision to contractually waive the right to trial by jury is one that courts should respect unless the agreement violates public policy." *Id.* at 780.

In *Poole*, we examined whether the plaintiff had waived his right to trial by jury by signing three contracts with the defendant for the purchase of a tractor-trailer truck. *Id.* at 775-77. We identified the following non-exhaustive list of applicable factors for determining whether to enforce jury-waiver provisions:

> (1) the conspicuousness of the jury-waiver provision; (2) the parties' business acumen and experience; (3) the representation, or lack thereof, of counsel; (4) the negotiations had concerning the agreement and the waiver provision; (5) the relative bargaining power of the parties; (6) the nature of the contract; and (7) the existence of fraud, overreaching, or unconscionability.

*Id.* at 784. The evidence concerning the jury waiver was primarily limited to three contracts the plaintiff entered with the bank. *Id.* We found that the jury-waiver provision found in the original note, disclosure, and security agreement signed by the plaintiff was not highly conspicuous because it "appear[ed] in the same size font as the remainder of the agreement, f[ell] within a larger paragraph discussing the lender's rights, [was] not underlined, and d[id] not provide a separate signature line." *Id.* However, we also found that this provision was "fairly straightforward and easy to understand." *Id.* This contract also included a bolded acknowledgement stating that the signer read and understood all the provisions of the agreement. *Id.* We also found it important that the plaintiff had additionally signed two other contracts with similar jury waivers and acknowledgment provisions. *Id.* We further noted that "[i]t is axiomatic that a party who signs a contract is presumed to know its contents," and we found "sufficient reason to impute knowledge of the jury-waiver provisions as issue to Mr. Poole[.]" *Id.* at 785. Ultimately, we held that the defendant's presentation of the three agreements was sufficient to uphold the trial court's ruling in light of the lack of countervailing evidence. *Id.*

Here, after a hearing, the trial court found that the parties voluntarily waived their right to trial by jury and that the terms set forth in the contract were binding on them. On appeal, Mr. Eleiwa maintains that the jury-waiver provision is unenforceable because it is inconspicuous, he lacked business acumen, he had no representation of counsel at the time of signing, he engaged in no negotiation, and he had little bargaining power. Furthermore, he argues that there were "serious allegations of fraud and unconscionability."

We note, however, that Mr. Eleiwa has not provided this Court with a transcript or a statement of evidence in the record on appeal. Without a transcript or statement of the evidence, we are unable to evaluate the trial court's finding that the parties voluntarily waived their right to trial by jury. *See Paschke v. Paschke,* No. E2023-00239-COA-R3-CV, 2024 WL 470361, at *4 (Tenn. Ct. App. Feb. 7, 2024). When an appellant fails to provide a transcript or statement of evidence, "this Court presumes that sufficient evidence existed to support the trial court's decision." *Id.* at *3 (quoting *Irvin v. City of Clarksville*, 767 S.W.2d 649, 653 (Tenn. Ct. App. 1988)); *see also Ramsay v. Custer*, 387 S.W.3d 566, 568 (Tenn. Ct. App. 2012) ("In the absence of a transcript or statement of the evidence, a conclusive presumption arises that the parties presented sufficient evidence to support the trial court's judgment, and this court will affirm the judgment.").

In sum, our review of the trial court's findings concerning the jury-waiver provision is hindered by the lack of a transcript or a statement of evidence in the record before us. Therefore, we must conclusively presume that the evidence presented supported the trial court's factual findings. We discern no reversible error in the trial court's enforcement of the jury-waiver provision of the contract.

### 3.    Arbitration

The contract also stated the following: "Any controversy or claim arising out of or relating to this Agreement or the breach thereof, shall be settled by arbitration. . . . Arbitration shall not be mandatory for [Aloha] to pursue its legal rights as to collection or repossession of any materials, supplies, or parts." Mr. Eleiwa argues that the contract required his counter-complaint to be arbitrated. As previously noted, after Aloha filed its initial complaint, Mr. Eleiwa filed a motion to dismiss and argued that *Aloha's* claims should be arbitrated pursuant to the terms of the contract. The trial court denied his motion to dismiss and found that the contract did not require arbitration of Aloha's claims. In his counter-complaint, Mr. Eleiwa requested a jury trial, and thereafter, he did not raise any argument regarding arbitration of his *counterclaims* in the trial court. Therefore, he has waived this issue on appeal. *See Chimneyhill Condo. Ass'n v. Chow*, No. W2020-00873-COA-R3-CV, 2021 WL 3047166, at *15 (Tenn. Ct. App. July 20, 2021) ("Generally, issues may not be raised for the first time on appeal."); *Moses v. Dirghangi*, 430 S.W.3d 371, 381 (Tenn. Ct. App. 2013) (citing *Waters v. Farr*, 291 S.W.3d 873, 918 (Tenn. 2009)) ("It is well settled that issues not raised at the trial level are considered waived on appeal.").

### 4.    Venue

The contract additionally stated that "[t]he undersigned agree to the jurisdiction and venue of any disputes arising from this Agreement being in the courts of Madison County, Tennessee. . . ." Mr. Eleiwa argues that this Court should determine that venue in Madison County was improper because his counter-complaint was a local action. *See Kampert v. Valley Farmers Co-op.*, No. M2009-02360-COA-R10-CV, 2010 WL 4117146, at *2

(Tenn. Ct. App. Oct. 19, 2010) (quoting *Burger v. Parker*, 290 S.W. 22, 23 (Tenn. 1926)) ("[A] local action is based on a cause of action that can only arise in a particular locality, because 'the subject of the action' (meaning that which has sustained the injury complained of) is local, 'and cannot be injured at any other place.'").  Aloha's complaint and amended complaint, filed in the circuit court of Madison County, stated that "[v]enue properly lies in this Court because the contract, which is the underlying subject matter of this lawsuit, provides that any disputes or actions regarding the same shall be handle[d] in the courts of Madison County."  In his counter-complaint, Mr. Eleiwa "incorporate[d] and adopt[ed]" the allegations concerning venue in Aloha's complaint and the "subsequent court ruling[.]"  Thereafter, Mr. Eleiwa did not raise any issue in the trial court regarding venue as to his counterclaims or whether his counterclaims were local actions.

However, we note that the issue of whether the counter-complaint constituted a local action could have implications for whether the court in Madison County had subject matter jurisdiction over his counterclaims.  Tennessee courts "have no jurisdiction of local actions brought in the wrong county[.]" *Pack v. Ross*, 288 S.W.3d 870, 873 (Tenn. Ct. App. 2008); *see also Terminix Int'l Co. v. Tapley*, No. 02A01-9701-CH-00028, 1997 WL 437222, at *5 (Tenn. Ct. App. Aug. 4, 1997) ("In local actions or in transitory actions that have been localized by statute, however, a court does not have subject matter jurisdiction over an action that is brought in the wrong venue.").  "[I]ssues of subject matter jurisdiction can be raised at any time by the parties or the court *sua sponte*." *Nandigam Neurology, PLC v. Beavers*, 639 S.W.3d 651, 667 (Tenn. Ct. App. 2021).  Therefore, we proceed to consider whether Mr. Eleiwa's counterclaims constituted local actions that could only be brought in Shelby County.

We have described the difference between "local" actions and "transitory" actions as follows:

> An important distinction to be made for the purpose of determining proper venue is between causes of action that are deemed to be transitory and those that are deemed to be local.  "A transitory action is based on a cause of action of a type that can arise anywhere." *Curtis v. Garrison*, 211 Tenn. 339, 364 S.W.2d 933, 936 (Tenn.1963); *Burger v. Parker*, 154 Tenn. 279, 290 S.W. 22, 22 (Tenn.1926).  Some obvious examples of a transitory action would be a claim for a personal injury arising from a tort, or an action for recovery of personal property.
>
> In contrast, a local action is based on a cause of action that can only arise in a particular locality, because "the subject of the action" (meaning that which has sustained the injury complained of) is local, "and cannot be injured at any other place." *Burger v. Parker*, 290 S.W. at 23. Local actions generally involve land. Examples include an action to quiet title to land, a trespass, or an injury to real estate. However, not every action that involves a specific

tract of land is considered a local action. For example, in *Mattix v. Swepston*, 127 Tenn. 693, 155 S.W. 928 (Tenn.1913), a suit that arose from obstruction of an easement was determined to be a transitory action, because the damages complained of were to the plaintiff's timber business, not to the land itself nor to the plaintiff's title to that land.

*Kampert*, 2010 WL 4117146, *at 2. Local actions may only be brought in the county where the subject matter of the dispute is located. *Id.* at *3 (citing *State ex rel. Logan v. Graper*, 4 S.W.2d 955, 956 (Tenn. 1927)). In contrast, "unless venue is otherwise expressly provided for," transitory actions may be brought in the county where the cause or action arose or in the county where the defendant resides or is found. *Id.*; *see also* Tenn. Code Ann. § 20-4-101(a). "The expression 'unless venue is otherwise expressly provided for' implicitly recognizes that parties can stipulate to a particular venue for resolution of transitory actions." *Kampert*, 2010 WL 4117146, at *3 (quoting Tenn. Code Ann. § 20-4-101(a)).

In *Kampert*, the plaintiff entered into a contract with the defendant whereby the defendant was to construct barns, sheds, and milking facilities on the plaintiff's dairy farm in Giles County. *Id.* at *1. The contract between the plaintiff and defendant had a clause that stated that "[t]his Agreement shall be construed and interpreted under Tennessee Law and venue for any litigation shall lie in the Circuit or Chancery Court for McMinn County, Tennessee." *Id.* The plaintiffs subsequently filed a complaint against the defendant in the circuit court of Giles County, alleging that the defendant had breached the contract "by performing shoddy workmanship, incurring cost overruns, and using inferior materials." *Id.* The plaintiffs further claimed that the defendants were "guilty of breach of contract, negligence, civil fraud, intentional infliction of emotional distress, and violation of the [Tennessee] Consumer Protection Act[.]" *Id.* Thereafter, the defendants filed a motion to dismiss for improper venue, arguing that because of the venue clause in the contract, the lawsuit could only be brought in McMinn County. *Id.* In response, the plaintiffs argued that the venue selection clause in the contract was void and relied on *Hall v. Southall Brothers*, 240 S.W. 298 (Tenn. 1921), in which the Tennessee Supreme Court held that under Tennessee law, any action involving injury to real estate is a local action and may only be brought in the county in which the real estate is located. *Kampert*, 2010 WL 4117146, at *1. The trial court agreed with this argument and dismissed the defendant's motion to dismiss for improper venue. *Id.* at *1-2. The defendants appealed. *Id.*

We reversed the decision of the trial court, finding that the action filed by the plaintiffs was a transitory action instead of a local action. *Id.* at *5. We noted that in their complaint, the plaintiffs did not mention an injury to the land or suggest that the value of their land had declined because of the defendants' alleged negligence. Instead, they claimed that the injury that they suffered was the loss of earnings and profits. *Id.* at *4. We further reasoned:

- 11 -

> If we were to hold this to be a local action, it would effectively make all actions on construction contracts local, and it would render void any forum selection clause in a construction contract that designates venue in a county other than the one where the construction takes place.
>
> Such a deviation from current well-established law would not only overturn settled precedent, it would contradict the statutory implication that contracts for improvement to real estate may include choice of venue provisions.

*Id.* Thus, we held that the plaintiffs' complaint was a transitory action and could arise anywhere. *Id.* at *5. Accordingly, the venue selection clause in the parties' construction contract could be enforced. *Id.*

Here, Mr. Eleiwa's counterclaims are similar to the plaintiffs' claims in *Kampert*. In his counter-complaint, Mr. Eleiwa alleged that Aloha had breached the contract signed by the parties, engaged in fraud and/or misrepresentation, and violated the Tennessee Consumer Protection Act. Notably, however, Mr. Eleiwa did not allege in his counter-complaint that he suffered any decline in the value of his land or injury to his property.[2] The counterclaims were "of a type that could arise anywhere." *Id.* Thus, Mr. Eleiwa's counter-complaint constitutes a transitory action. As such, the court in Madison County has subject matter jurisdiction over Mr. Eleiwa's counterclaims.

### C. Motion for Relief from Judgment

We next address Mr. Eleiwa's argument that the trial court abused its discretion by denying his motion for relief from judgment. As previously discussed, in January 2023, Mr. Eleiwa moved for relief from the August 2022 judgment on the basis that new evidence emerged that was "directly contrary to the testimony of [Aloha] and its representatives at trial." The trial court denied the motion and found that the alleged newly discovered evidence did not "qualify as new evidence" because information on the permits was requested and provided in discovery and because the information was a matter of public record available to both parties.

---

[2] In his response to Aloha's first set of interrogatories, Mr. Eleiwa first alleged that Aloha's concrete trucks had caused "major cracks" to form in his concrete driveway and that Aloha's trucks had damaged the low brick walls at the street entrance to his home. From our review of the record, it does not appear, however, that Mr. Eleiwa ever asserted a *cause of action* for damages regarding the alleged damage to his home. In its August 2022 order, the trial court made several findings concerning these allegations. Due to Mr. Eleiwa's failure to provide a transcript or statement of the evidence, we cannot determine whether there existed any claims for damage to Mr. Eleiwa's property that were tried by consent. *Bunch v. Bunch*, No. E2014-02121-COA-R3-CV, 2015 WL 6000577, at *9 (Tenn. Ct. App. Oct. 15, 2015) ("[A]s the record was not preserved, we are unable to determine whether the issue was or was not tried by consent of the parties.").

At the outset, we note that Mr. Eleiwa styled his post-trial motion as a motion for relief from judgment pursuant to Rule 60 of the Tennessee Rules of Civil Procedure. However, as previously discussed, when he filed the motion, there was no final judgment in the case because the trial court had not set the amount of attorney's fees awarded to Aloha. Therefore, his motion was substantively a motion to revise an interlocutory order pursuant to Rule 54.02. *See Harris v. Chern*, 33 S.W.3d 741, 743 (Tenn. 2000) ("Rule 54.02 applies to cases, such as this one, in which judgment was not entered as to all of the defendants or claims."); *Dover v. Dover*, No. E2019-01891-COA-R3-CV, 2020 WL 7224368, at *14 (Tenn. Ct. App. Dec. 8, 2020) ("The trial court's order was interlocutory at the time and, consequently, Wife's motions were substantively motions to revise an interlocutory order pursuant to Tenn. R. Civ. P. 54.02."); Tenn. R. Civ. P. 54.02 (providing that an interlocutory order is "subject to revision at any time" before a final judgment). "We treat [Mr. Eleiwa's] motion[] according to the substance rather than [his] characterization." *Dover*, 2020 WL 7224368, at *14. We review a trial court's denial of a Rule 54.02 motion to revise under the abuse of discretion standard. *Harris*, 33 S.W.3d at 746 ("A trial court's ruling on a motion to revise pursuant to Rule 54.02 will be overturned only when the trial court has abused its discretion.").

Here, Mr. Eleiwa argues that the trial court abused its discretion by basing its decision on a "clearly erroneous assessment of the evidence." As previously discussed, our review of the trial court's findings is hindered by the fact that the record does not contain a transcript or a statement of the evidence. Mr. Eleiwa, as the appellant in this case, carries the burden to provide this Court "with a fair, accurate, and complete account of what transpired in the trial court." *PNC Multifamily Cap. Institutional Fund XXVI Ltd. P'ship v. Mabry*, 402 S.W.3d 654, 661 (Tenn. Ct. App. 2012). "It is well settled that, in the absence of a transcript or statement of the evidence, there is a conclusive presumption that there was sufficient evidence before the Trial Court to support its judgment and this Court must therefore affirm the judgment." *Id.* Because Mr. Eleiwa has failed to provide this Court with a transcript or statement of the evidence, we cannot adequately assess whether the trial court abused its discretion by erroneously assessing the evidence. Consequently, we affirm the trial court's denial of Mr. Eleiwa's motion.

### D. Attorney's Fees on Appeal

Aloha presents an additional issue requesting attorney's fees for this appeal. When an agreement exists between parties that entitles the prevailing party to recover attorney's fees, "[o]ur courts long have observed at the trial court level that parties are contractually *entitled* to recover their reasonable attorney's fees . . . ." *Eberbach v. Eberbach*, 535 S.W.3d 467, 478 (Tenn. 2017); *see, e.g.*, *Seals v. Life Invs. Ins. Co. of Am.*, No. M2002-01753-COA-R3-CV, 2003 WL 23093844, at *4 (Tenn. Ct. App. Dec. 30, 2003); *Hosier v. Crye-Leike Com., Inc.*, No. M2000-01182-COA-R3-CV, 2001 WL 799740, at *6 (Tenn. Ct. App. July 17, 2001). Our supreme court has stated that this observation is also true at the appellate court level and explained its reasoning as follows:

Absent fraud, mistake, or some other defect, our courts are required to interpret contracts as written, giving the language used a natural meaning. *U.S. Bank, N.A. v. Tennessee Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386-87 (Tenn. 2009). This axiomatic rule does not change or lose its force because the parties to an agreement are before an appellate court. Indeed, one of the bedrocks of Tennessee law is that our courts are without power to make another and different contract from the one executed by the parties themselves. *Dubois v. Gentry*, 182 Tenn. 103, 184 S.W.2d 369, 371 (1945); *see also Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975) ("The courts, of course, are precluded from creating a new contract for the parties.").

*Eberbach*, 535 S.W.3d at 478. Following this reasoning, the Court concluded that our appellate courts "do not have discretion to deny an award of fees mandated by a valid and enforceable agreement between the parties . . . ." *Id.* at 479. Therefore, if the parties' agreement provided for attorney's fees under certain circumstances, that provision must be enforced.

Here, the contract contained language providing that "[a]ny breach of this Agreement, including but not limited to the failure to pay [Aloha] for services provided, shall result in [Mr. Eleiwa] paying the cost of collection fees . . . and reasonable attorney's fees of [Aloha] and court costs." There is a valid and enforceable contract which contains language providing for "a reasonable attorney's fee." Aloha initiated this lawsuit and alleged that Mr. Eleiwa failed to pay Aloha the amount required by the contract. The trial court found that Mr. Eleiwa had breached the contract and awarded judgment in favor of Aloha. Additionally, the trial court awarded Aloha "reasonable attorney's fees" pursuant to the contract. From our review of the record, Mr. Eleiwa did not challenge this award of attorney's fees in the trial court or in his appellate brief.[3] Because the contract clearly provides for attorney's fees, we conclude that Aloha is entitled to an award of reasonable

---

[3] At oral argument, counsel for Mr. Eleiwa argued that the attorney's fees awarded by the trial court were not provided for in the contract because the award included fees incurred in the defense of Mr. Eleiwa's counterclaims. He also argued that the trial court erred by failing to make findings of fact concerning the relevant factors for determining the reasonableness of attorney's fees. *See* Tenn. R. Sup. Ct. 8, RPC 1.5 (providing for ten factors to be considered in determining the reasonableness of attorney's fees). In August 2022, counsel for Aloha filed an affidavit stating that Aloha had incurred $36,771.00 in attorney's fees. The trial court awarded this amount of attorney's fees to Aloha. Mr. Eleiwa did not raise any issue with the calculation of attorney's fees in the trial court or in his appellate brief. This Court has previously made clear that "[i]ssues initially raised at oral argument are not properly presented for review in accordance with this court's rules." *Mini Sys. Inc. v. Alexander*, No. W2019-01871-COA-R3-CV, 2020 WL 6892010, at *3 (Tenn. Ct. App. Nov. 24, 2020) (quoting *Christie v. Christie*, No. M2012-02622-COA-R3-CV, 2014 WL 4293966, at *6 (Tenn. Ct. App. Apr. 25, 2014)). Therefore, we decline to address this issue.

appellate attorney's fees, and we remand the case to the circuit court for a determination of the appropriate amount of those fees.

## V.    CONCLUSION

The decision of the circuit court is affirmed and remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to the appellant, Khaled Eleiwa, a/k/a Kevin Eleiwa, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE